IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MARK MULLANEY, ET AL., | ) | CIVIL NO. 07-00313 ACK-LEK |
| Plaintiffs, | ) | |
| vs. | ) | |
| HILTON HOTELS CORPORATION, ET AL., | ) | |
| Defendants. | ) | |

**FINDINGS AND RECOMMENDATION TO GRANT IN PART AND
DENY IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AGAINST DEFENDANT HILTON HOTELS CORPORATION
DBA HILTON WAIKOLOA VILLAGE FOR SPOLIATION OF EVIDENCE
RE: PHOTOS OF SCENE AND/OR DEFAULT JUDGMENT AS A SANCTION**

Before the Court, pursuant to a referral by Senior United States District Judge Alan C. Kay, is Plaintiffs Mark Mullaney and Lynette Mullaney's (collectively "Plaintiffs"), Motion for Summary Judgment Against Defendant Hilton Hotels Corporation dba Hilton Waikoloa Village for Spoliation of Evidence Re: Photos of Scene and/or Default Judgment as a Sanction ("Motion"),[1] filed on March 11, 2009.  Defendant Hilton Hotels Corporation, doing business as Hilton Waikoloa Village ("Hilton"), filed its memorandum in opposition and separate and

---

[1] At the hearing on the Motion, Plaintiffs' counsel conceded that the Motion is a motion for discovery sanctions, not a motion for summary judgment.  Based on the representation of counsel and this Court's review of the Motion, the Court construes the Motion as a motion for discovery sanctions.  The Court therefore will not address the parties' arguments regarding whether Plaintiffs complied with the requirements for a summary judgment motion.

concise statement of facts on May 29, 2009.  Defendant ATTCO, Incorporated ("ATTCO") filed a statement of no position on May 29, 2009.  Plaintiffs filed their a supplemental memorandum in support of the Motion ("Reply") on June 2, 2009.  This matter came on for hearing on June 18, 2009.  William Lawson, Esq., appeared on behalf of Plaintiffs; David Gruebner, Esq., appeared on behalf of Hilton; and Lynn Costales, Esq., appeared on behalf of ATTCO.  After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, this Court HEREBY FINDS AND RECOMMENDS that Plaintiffs' Motion be GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

The instant action arises from a January 5, 2006 incident that occurred at the Hawaii International Dairy Queen exposition or convention ("IDQ Expo") at the Hilton Waikoloa Village resort ("Waikoloa").  Mr. Mullaney was seriously injured when a large registration booth fell over and hit him in the head, back, shoulders, and arms.  On June 8, 2007, Plaintiffs filed the instant diversity action against Hilton and ATTCO (collectively "Defendants").[2]  Hilton owns and operates the Waikoloa, and it contracted with ATTCO to set up equipment for

---

[2] Plaintiffs also sued Defendant Hilton Waikoloa, LLC, but on October 9, 2007, the district judge approved the parties' stipulation to dismiss the claims against Defendant Hilton Waikoloa, LLC.

the IDQ Expo.  The Complaint alleges the following claims: negligence; products liability; breach of warranty; failure to take precautions and to warn; premises liability; and gross negligence.  Plaintiffs seek special damages, general damages, punitive/exemplary damages, any other damages proven at trial, interest, attorney's fees and costs, and other appropriate relief.

I. **Plaintiffs' Motion**

In the instant Motion, Plaintiffs state that a Waikoloa security guard, John Scovel, prepared a Guest Accident Report and a Security Department Report regarding the incident.  [Motion, Decl. of William H. Lawson ("Lawson Decl."), Exhs. 2 & 3.]  Both reports indicate that photographs were taken of the scene and were submitted with the reports.  [Exh. 2 to Lawson Decl. at 2; Exh. 3 to Lawson Decl. at 1.]  During his deposition, Mr. Scovel testified that he took more than one color photograph of the fallen registration booth with a digital camera issued by the Waikoloa.  He confirmed that the photographs should be with the report.  His general practice is that, when he prints pictures taken with the Waikoloa camera, he removes the memory card from the camera and prints the pictures on a color printer in the office.  Mr. Scovel recalled seeing printed pictures relating to this incident in particular around January 2006, but not more recently than that.  [Exh. 1 to Lawson Decl. (Excerpts of Trans.

of 6/11/08 Depo. of John Scovel) ("Scovel Depo.") at 32-33.] After the incident, Mr. Scovel did not try to move the fallen registration booth, nor did he see anyone else try to move it. Mr. Scovel does not recall any information about the position of the booth or whether there was any damage to the booth. [Id. at 34.] Mr. Scovel met with Mr. Mullaney a few days after the incident to fill out the report, but he did not show Mr. Mullaney the pictures of the scene. [Id. at 34, 67.]

Plaintiffs made several requests for Hilton to produce the photographs, but it has not done so. Plaintiffs therefore argue that Hilton has spoiled the printed photographs as well as any digital files of the photographs. Plaintiffs contend that Hilton should not be able to oppose its liability or argue that Mr. Mullaney failed to mitigate damages because it spoiled the only visual evidence of the scene. Plaintiffs argue that the photographs would have helped the jury understand the accident and could have resolved inconsistent testimony regarding whether or not the booth hit a column before it hit Mr. Mullaney. Further, Plaintiffs believe the photographs would have shown blood on the booth, ground, and Mr. Mullaney's clothing. They argue that this would have helped Plaintiffs prove their damages.

Plaintiffs argue that a directed verdict on liability or on the mitigation of damages is a reasonable sanction for Hilton's spoliation of key evidence. Plaintiffs cite two state

cases in support of the imposition of default judgment as a sanction.

## II.  Hilton's Opposition

In its memorandum in opposition, Hilton states that ATTCO designed the registration booths used at the Waikoloa and that the booth in question was the same design as the booths that ATTCO had previously used there.  [Hilton's Separate and Concise Statement of Facts, Decl. of David A. Gruebner ("Gruebner Decl."), Exh. B (Excerpts of Trans. of 4/17/08 Depo. of Daniel Anderson) ("Anderson Depo."), at 29.]  Hilton submitted a photograph of the registration area as it existed in January 2006.  [Id., Exh. C.]  Hilton also notes that Plaintiffs produced sixteen photographs of the booth, its construction materials, and the scene of the incident.  [Id., Exh. F.]

Plaintiffs served a discovery request for all photographs taken or prepared in this case of the scene, Mr. Mullaney, and the registration booth.  Plaintiffs, however, did not request an examination of the booth or an exemplar. [Id., Exh. G (various discovery requests from Plaintiffs to Defendants).]  Sandra Oyama-Yuen, Director of Claims/Worker's Compensation at the Waikoloa, asked Presley Hart, Assistant Director of Security and Safety, Derek Tolentino, Director of Security and Safety, and Len Hiraoka, Safety Coordinator, to assist in the search for the requested photographs.  They did not

find any photographs relating to the incident. [Id., Exh. H (Decl. of Sandra Ann T. Oyama-Yuen) ("Oyama-Yuen Decl.") at ¶¶ 1, 4.] Ms. Oyama-Yuen stated that, when incident photographs are taken with the Waikoloa Security Department camera, the digital photographs are stored on the camera's memory card. When the card is full, the photographs are downloaded on to a CD-R maintained by the Security Department. The memory card is then reused. [Id. at ¶ 3.]

Mr. Hart searched Hilton's security records, including the Security Department's CD-R's, for anything related to Mr. Mullaney. He searched all CD-R's created from one month before the incident to one month afterward. [Id., Exh. I (Decl. of Presley Hart) ("Hart Decl.") at ¶ 4.] Mr. Tolentino also searched Hilton's security records, including all CD-R's created on January 5, 2006 and up to one week prior. [Id., Exh. J (Decl. of Derek Tolentino) ("Tolentino Decl.") at ¶ 4.] Ms. Oyama-Yuen, Mr. Hart, and Mr. Tolentino all stated that there is no reason for any Hilton personnel to either delete photographs from the memory card before they are downloaded or to dispose of a CD-R with downloaded photographs. [Oyama-Yuen Decl. at ¶ 5; Hart Decl. at ¶ 5; Tolentino Decl. at ¶ 5.] Mr. Hart and Mr. Tolentino each stated that he did not delete, destroy, or throw away any photographs pertaining to the incident. Further, they are unaware of the deletion or destruction of any Hilton security

photographs.  [Hart Decl. at ¶ 6; Tolentino Decl. at ¶ 6.] Ms. Oyama-Yuen also stated that she has no knowledge of any photographs pertaining to the incident being deleted, destroyed, or removed from the hotel's files.  [Oyama-Yuen Decl. at ¶ 6.] She states that, if a security officer used the hotel's camera to take pictures relating to the incident, it is possible that the memory card was full or that the batteries needed to be recharged or replaced.  In either event, the photographs taken would not have been saved on to the memory card and there would not have been any digital images to download.  [Id. at ¶ 7.]

      Hilton argues that Plaintiffs' reliance on state law is misplaced.  Federal case law does provide that dismissal is available as a discovery sanction, but it is only warranted for deliberately deceptive practices which undermine the integrity of the judicial proceedings.  Hilton argues that there is no evidence that it intentionally destroyed, lost, or misplaced the photographs, or even that it did so accidentally.  Hilton argues that Plaintiffs are not prejudiced by the unavailability of the photographs because the existence, location, and position of the registration booth are not in dispute, nor is the fact that the wind blew it over.  Plaintiffs have other photographs of the scene as well as eyewitness testimony from Mr. Mullaney and three independent IDQ witnesses.  They can testify as to the presence of blood in the area and Mr. Mullaney's condition.  Plaintiffs

also could have examined either the booth itself or an exemplar thereof. Plaintiffs themselves only assert that the photographs would be helpful.

### III. **Plaintiffs' Reply**

In their Reply, Plaintiffs emphasize that Mr. Scovel did not merely testify that he took photographs which may or may not have been saved on the memory card. He testified that he downloaded and printed the pictures on the same security office computer that he prepared his report on. [Reply at 3 (citing Decl. of William H. Lawson ("Lawson Reply Decl."), Exh. A (Excerpts of Trans. of 6/11/08 Depo. of John Scovel) at 43-44).[3]] He also testified that he saw printed copies of the photographs. This indicates that digital files did exist on the memory card and probably were also on the computer's hard drive. Plaintiffs argue that there is no indication than anyone other than Hilton employees had access to the photographs or the digital files. The speculation that digital files were never created in the first place is inconsistent with Mr. Scovel's testimony.

Plaintiffs argue that the photographs of the scene after the accident but before cleanup are essential to the reconstruction of the scene. Both Plaintiffs and ATTCO have

---

[3] The Court notes that the cited portion of Mr. Scovel's deposition testimony appears to address his common practice in report writing with photographs, not the specific report regarding Mr. Mullaney's incident.

retained accident reconstruction experts and it is far more difficult for them to recreate the scene without the photographs. Hilton recognizes that there is inconsistent testimony from witnesses regarding whether the booth hit a pillar when it fell, which would arguably have blunted the impact when it hit Mr. Mullaney.  Plaintiffs assert that the photographs in question would conclusively resolve this issue rather than leaving it for the jury to decide.  Plaintiffs argue that an appropriate sanction for Hilton's spoliation of the photographs is a finding of liability and a finding of legal causation for all of Plaintiffs' damages suffered in the accident.

      Plaintiffs also state that they dispute some of Hilton's statements of fact.  For example, they contest the relevance of the photograph of the booth as it allegedly existed in January 2006.  It was taken at some unknown time before the booth fell and it only depicts one angle.  It also does not show the damage to the booth and the blood and flesh on the booth and the ground from the accident.  Further, Plaintiffs argue that it was impossible to inspect the actual booth because it was disassembled within minutes of the incident.  [Lawson Reply Decl., Exh. B (Excerpts of Trans. of 4/17/08 Depo. of Daniel Anderson) at 40-41.]  Plaintiffs obtained pictures of components used in that type of booth, but it is not known whether those pieces were part of the booth in question.  The photographs at

issue in the instant Motion are the only evidence of the condition of the booth after the accident.

## DISCUSSION

### I. Applicable Law

At the outset, this Court notes that federal law, not Hawaii law, applies to the instant dispute.  See, e.g., Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc., 389 F.3d 1339, 1353 (11th Cir. 2004) ("it is federal law, and not state law, that controls discovery in diversity actions when a federal Rule is on point, provided that it does not violate the Rules Enabling Act or the U.S. Constitution" (citing Hanna v. Plumer, 380 U.S. 460, 471 (1965))).

The Ninth Circuit has held that a district court has the authority to impose sanctions for spoliation pursuant to: "the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who fails to obey an order to provide or permit discovery."  Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006) (citing Fjelstad v. Am. Honda Motor Co., 762 F.2d 1334, 1337-38 (9th Cir. 1985); Fed. R. Civ. P. 37(b)(2)(C)).  In the present case, Plaintiffs never obtained a court order requiring Hilton to produce the photographs.  Thus, Hilton's failure to produce the photographs did not violate a discovery order, and any sanction must be imposed pursuant to the

district court's inherent power.

Plaintiffs have proposed the following sanctions for Hilton's spoliation of the photographs: entry of default judgment; a finding of liability on behalf of Hilton; a finding as to causation; and precluding Hilton from arguing that Mr. Mullaney failed to mitigate damages.  Issue preclusion or the exclusion of evidence can also be tantamount to a terminating sanction.  See, e.g., Ware v. Rodale Press, Inc., 322 F.3d 218, 221 (3d Cir. 2003).  All of the sanctions that Plaintiffs seek are terminating sanctions or the equivalent thereof.  This Court will therefore apply the standard for the imposition of dismissal as sanction for spoliation.

The Ninth Circuit has stated that:

> Dismissal is an available sanction when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings because courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.  Before imposing the harsh sanction of dismissal, however, the district court should consider the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.

Leon, 464 F.3d at 958 (citations and quotation marks omitted).  A court need not specifically address all five factors before ordering dismissal, but it must find willfulness, fault, or bad

11

faith, and it must consider lesser sanctions.  See id.

## II. **Whether Sanctions are Warranted Against Hilton**

This Court finds that photographs of the scene were taken after the incident and before the booth was disassembled. Mr. Scovel testified that: he took more than one photograph of the scene; he later saw printed copies of the photographs; and the photographs should be with his report.  [Scovel Depo. at 32-33.]  There is no evidence which would call the credibility of Mr. Scovel's testimony into question.  In its memorandum in opposition, Hilton speculated that Mr. Scovel only attempted to take the photographs, and that the digital images were not saved on the camera's memory card for mechanical reasons.  [Hilton Mem. in Opp. at 6-7.]  This Court finds that Hilton's proffered explanation is inconsistent with Mr. Scovel's undisputed testimony.  Even if Hilton's search for the photographs was unsuccessful and Hilton cannot imagine a reason for its personnel to either delete the digital files or throw away printed copies of the photographs, [id. at 6,] that does not mean that the files and printed copies never existed in the first place.  Thus, this Court finds that the photographs existed, in digital file and/or printed format, and that they were in Hilton's possession at some point.  For whatever reason, Hilton is now unable to produce the photographs.  This Court must determine whether Hilton should be sanctioned for depriving Plaintiffs of the photographs.

A. **Willfulness, Fault, or Bad Faith**

A court may find that there was willful spoliation if "a party had some notice that the evidence was potentially relevant." United States v. $40,955.00 in U.S. Currency, 554 F.3d 752, 758 (9th Cir. 2009) (citations omitted); see also Leon, 464 F.3d at 959 ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." (citation and quotation marks omitted)). Mr. Scovel took the photographs of the fallen booth before it was disassembled. [Scovel Depo. at 32.] The nature of the incident and the photographs themselves should have put Hilton on notice of potential litigation regarding the incident and of the photographs' relevance to such litigation.

The Ninth Circuit has noted that "[a] party does not engage in spoliation when, without notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business." $40,955.00 in U.S. Currency, 554 F.3d at 758 (citation omitted). Hilton, however, had notice of the photographs' potential relevance, and Hilton did not destroy the photographs in the normal course of its business. Hilton's policy and normal course of business arguably required it to maintain the photographs. When digital photographs are taken on the Waikoloa camera, they are initially

13

stored on the camera's memory card.  When the card is full, the photographs are downloaded on to a CD-R, which is maintained by the Waikoloa Security Department.  [Oyama-Yuen Decl. at ¶ 3.] Ms. Oyama-Yuen also represented that there is no reason for Waikoloa staff to delete the digital files before they are burned onto a CD-R, nor is there any reason for Waikoloa staff to destroy or dispose of the CD-R.  [Id. at ¶ 5.]

Insofar as Waikoloa policy and business procedure required the staff to retain the photographs in some form and the staff failed to do so, this Court finds that Hilton willfully spoiled the photographs.

**B. Prejudice**

There are no other photographs of the booth in question after it fell.  Further, Plaintiffs could not have inspected the booth itself because it was disassembled soon after the incident. Plaintiffs were able to photograph pieces used in booths of the same type as the booth in question, but there was no way to determine which of those parts, if any, were actually used in the booth that fell on Mr. Mullaney.  In the Motion, Plaintiffs state:

> The fractured pieces of the 32.9 foot long, 8 feet 1 inch high, 725 pound registration booth would surely *help* the jury understand Mr. MULLANEY's accident.  It would also have *helped* resolve an inconsistency in the testimony (by Joan Gilmore) that the booth hit a column (which it didn't) instead of breaking apart on Mr. Mullaney . . . . The condition of the scene would have *helped*

14

> Plaintiffs prove up damages.  It is believed that there was blood on the booth, the ground and Mr. Mullaney's clothing.

[Mem. in Supp. of Motion at 7-8 (citations omitted) (italics added).]  It impossible to know what the photographs would have shown, but it is reasonable to believe that they could have shown whether it was likely that the booth hit a column before hitting Mr. Mullaney and that they could have shown blood and flesh on the booth and the ground.  This Court therefore finds that the photographs could have been helpful to Plaintiffs and that Plaintiffs are prejudiced because the photographs are not available.

However, even assuming that the photographs depict the scene as Plaintiffs allege, the photographs are not critical to Plaintiffs' case.  The dimensions of the booth are known, and it is undisputed that the booth fell on Mr. Mullaney because of wind.[4]  At the hearing on the Motion, Plaintiffs' counsel stated that Mr. Mullaney and an eye witness will testify that the booth did not hit a column before it fell on him.  A third eye witness will testify that the booth did hit a column before it hit Mr. Mullaney, and a fourth eye witness will testify that he does not remember whether or not the booth hit a column.  The photographs could have resolved this disputed issue, but Plaintiffs will

---

[4] The Court notes that there are various disputes concerning the wind which caused the booth to fall, but the photographs could not have resolved those disputes.

15

still be able to present testimony that the booth did not hit a column. Mr. Mullaney will also be able to testify as to what happened that day and the severity of the injuries he suffered. In addition, two IDQ witnesses testified during their depositions that they saw Mr. Mullaney bleeding after the booth fell on him. [Gruebner Decl., Exh. D (Excerpts of Trans. of 2/9/09 Depo. of Michael Ochs), at 91 (stating that Mr. Mullaney was bleeding profusely and that there was blood on his clothing), Exh. E (Excerpts of Trans. of 2/9/09 Depo. of Deborah Lorenzen), at 31 ("We did see blood coming from his head.").] Thus, although the photographs may have helped Plaintiffs prove their positions on these issues, the absence of the photographs does "not eclipse entirely the possibility of a just result." <u>See</u> <u>Nursing Home Pension Fund v. Oracle Corp.</u>, 254 F.R.D. 559, 564 (N.D. Cal. 2008) (citation and quotation marks omitted).

The Court therefore finds that, although Plaintiffs are prejudiced by the fact that the photographs are unavailable, their prejudice is not so severe as to warrant terminating sanctions.

**C. <u>Policy Factors</u>**

This Court finds that the public's interest in the expeditious resolution of this case and the district court's need to manage its docket are neutral. There is no indication that the spoliation of the photographs caused this litigation to be

significantly more expensive or more time consuming than it would have been if the photographs had been available.  In contrast, the public policy favoring resolution of cases on their merits weighs strongly against terminating sanctions.

### D. Lesser Sanctions

This Court finds that there are lesser sanctions available which would allow the case to be resolved on its merits while still preventing Hilton from benefitting from the absence of the photographs.  Having reviewed all of the relevant factors, this Court FINDS that Hilton's spoliation of the photographs does not warrant terminating sanctions, but it does warrant lesser sanctions.

This Court RECOMMENDS that the district judge sanction Hilton by allowing Plaintiffs to present evidence at trial regarding Hilton's failure to preserve the photographs.[5]  This Court RECOMMENDS that the district judge order Hilton to produce a live witness with personal knowledge about the photographs for examination during Plaintiffs' case in chief.  Plaintiffs may call the witness at any time during their case in chief, but they must provide reasonable notice to Hilton.

### CONCLUSION

On the basis of the foregoing, this Court HEREBY FINDS

---

[5] The Court, however, recognizes that such testimony would be subject to, or may even be excluded under, any evidentiary rulings made by the district judge.

17

AND RECOMMENDS that Plaintiffs' Motion for Summary Judgment Against Defendant Hilton Hotels Corporation dba Hilton Waikoloa Village for Spoliation of Evidence Re: Photos of Scene and/or Default Judgment as a Sanction, filed March 11, 2009, be GRANTED IN PART AND DENIED IN PART.  The Court RECOMMENDS that Plaintiffs' request for sanctions be GRANTED to the extent that Plaintiffs be allowed to present evidence at trial, according to the terms recommended herein, regarding Hilton's failure to preserve the photographs.  The Court RECOMMENDS that Plaintiffs' Motion be DENIED in all other respects.

      IT IS SO FOUND AND RECOMMENDED.

      DATED AT HONOLULU, HAWAII, June 30, 2009.



      /S/ Leslie E. Kobayashi
      Leslie E. Kobayashi
      United States Magistrate Judge

**MARK MULLANEY, ET AL. V. HILTON HOTELS CORPORATION, ET AL; CIVIL NO. 07-00313 ACK-LEK; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT HILTON HOTELS CORPORATION DBA HILTON WAIKOLOA VILLAGE FOR SPOLIATION OF EVIDENCE RE: PHOTOS OF SCENE AND/OR DEFAULT JUDGMENT AS A SANCTION**